

HOUSE BILL 24-1136

BY REPRESENTATIVE(S) Pugliese and Amabile, Bacon, Bird, Boesenecker, Brown, deGruy Kennedy, Duran, English, Garcia, Hamrick, Hernandez, Herod, Jodeh, Kipp, Lindsay, Lukens, McCormick, McLachlan, Parenti, Ricks, Rutinel, Snyder, Story, Taggart, Titone, Valdez, Young, McCluskie, Lieder, Marvin;
also SENATOR(S) Cutter and Smallwood, Buckner, Exum, Jaquez Lewis, Kolker, Michaelson Jenet, Priola, Roberts, Fenberg.

CONCERNING MEASURES TO ENCOURAGE HEALTHIER SOCIAL MEDIA USE BY YOUTH, AND, IN CONNECTION THEREWITH, MAKING AN APPROPRIATION.

*Be it enacted by the General Assembly of the State of Colorado:*

**SECTION 1. Legislative declaration.** (1) The general assembly finds and declares that:

(a) On May 23, 2023, U.S. Surgeon General Dr. Vivek Murthy released a Social Media and Youth Mental Health advisory to recognize the growing impact of social media on youth mental health and well-being as a significant public health challenge that requires immediate awareness and action;

---

*Capital letters or bold & italic numbers indicate new material added to existing law; dashes through words or numbers indicate deletions from existing law and such material is not part of the act.*

(b)  The advisory includes recommendations for policymakers to address this issue, including to "support the development, implementation, and evaluation of digital and media literacy curricula in schools and within academic standards" and "ensure technology companies share data relevant to the health impacts of their platforms";

(c)  In the United States, up to 95% of youth ages 13 to 17 report using social media platforms, and a third of youth report using social media "almost constantly";

(d)  A study of youth in the United States ages 12 to 15 found that youth who spend three or more hours a day on social media had double the risk of experiencing poor mental health outcomes, including experiencing symptoms of depression and anxiety. As of 2021, the average time spent on social media for this age group is three-and-a-half hours a day, with one in four youth spending five or more hours a day on the platforms, and one in seven spending seven or more hours a day on social media.

(e)  A systematic review of 42 studies on the effects of excessive social media use found a consistent relationship between social media use and poor sleep quality, reduced sleep duration, sleep difficulties, and depression among youth;

(f)  Social media sites are designed to maximize user engagement, which can encourage excessive social media use and behavioral dysregulation. Youth undergo critical periods of brain development, and social media exposure and frequent use may be associated with distinct changes in the developing brain, including overstimulation of the amygdala, triggering pathways similar to those in individuals with substance use or gambling addictions.

(g)  The 2020 Comprehensive Health Academic Standards in Colorado include standards for comprehensive health and physical education, among them the importance of identifying and managing the risk and the impacts of modern technology and social media on students' physical and personal wellness;

(h) Understanding more about how technology and health intersect can help solve certain societal problems and improve the mental and

PAGE 2-HOUSE BILL 24-1136

physical health of Coloradans. Providing free resources educators can use while teaching comprehensive health will help educators meet the essential skills outlined in the 2020 Comprehensive Health Academic Standards.

(i) At the federal level, legislation and reforms to improve social media platforms that youth access are slow-moving and do not meet the demands and fast-moving nature of social media; and

(j) States recognize the growing impact of social media and problematic technology use on youth mental health and the importance of enacting legislation to address those concerns. States can exercise leadership in this area rather than waiting for slow-moving federal legislation to do so.

(2) The general assembly therefore declares that it is a matter of statewide concern to provide research-based education and interventions, including resources on the effects of social media use on brain development, how to mitigate the risks associated with social media use, and how to maintain well-being while interacting in online environments, to help youth make informed decisions on responsible social media use.

**SECTION 2.** In Colorado Revised Statutes, **add** 22-2-127.8 as follows:

**22-2-127.8. Social media impacts on mental health education literacy - resource bank - technical assistance - reporting.** (1) (a) THE DEPARTMENT SHALL CREATE AND MAINTAIN A RESOURCE BANK OF EXISTING EVIDENCE-BASED, RESEARCH-BASED SCHOLARLY ARTICLES AND PROMISING PROGRAM MATERIALS AND CURRICULA PERTAINING TO THE MENTAL AND PHYSICAL HEALTH IMPACTS OF SOCIAL MEDIA USE BY YOUTH, INTERNET SAFETY, AND CYBERSECURITY. THE DEPARTMENT SHALL CONVENE A TEMPORARY STAKEHOLDER GROUP TO ASSIST WITH THE CREATION AND DEVELOPMENT OF A PLAN FOR ONGOING MAINTENANCE OF THE RESOURCE BANK BY THE DEPARTMENT. THE STAKEHOLDER GROUP SHALL ALSO IDENTIFY AVENUES FOR INFORMING LOCAL EDUCATION PROVIDERS, PARENTS, YOUTH, AND THE PUBLIC ABOUT THE RESOURCE BANK. THE MATERIALS AND CURRICULA MAY BE USED IN ELEMENTARY AND SECONDARY SCHOOLS IN THE STATE. TO THE EXTENT POSSIBLE, THE RESOURCE BANK MATERIALS, SCHOLARLY ARTICLES, AND CURRICULA MUST BE YOUTH-FRIENDLY, CULTURALLY SENSITIVE, AND AVAILABLE IN BOTH ENGLISH AND SPANISH,

AND MAY INCLUDE INTERNET LINKS TO SCHOLARLY ARTICLES, RESOURCES, AND MATERIALS ABOUT THE MENTAL AND PHYSICAL HEALTH IMPACTS OF SOCIAL MEDIA USE, INTERNET SAFETY, AND CYBERSECURITY FROM ENTITIES THAT THE DEPARTMENT FINDS RELIABLE.

(b) TO CREATE THE RESOURCE BANK DESCRIBED IN SUBSECTION (1)(a) OF THIS SECTION, THE DEPARTMENT SHALL CONVENE A TEMPORARY STAKEHOLDER GROUP TO IDENTIFY THE SCHOLARLY ARTICLES, MATERIALS, AND CURRICULA THAT WILL BE A PART OF THE RESOURCE BANK.

(c) THE STAKEHOLDER GROUP MUST CONSIST OF NO MORE THAN FIFTEEN MEMBERS, INCLUDING A DEPARTMENT REPRESENTATIVE AND, WHEN POSSIBLE, A PERSON OR PEOPLE REPRESENTING EACH OF THE FOLLOWING: EDUCATORS; SCHOOL MENTAL HEALTH PROFESSIONALS; PARENTS; YOUTH BETWEEN THE AGES OF EIGHTEEN TO TWENTY-FIVE; PUBLIC HEALTH ADVOCACY NON-PROFITS; AN EXPERT IN TECHNOLOGY SUCH AS A CYBERSECURITY EXPERT, A REPRESENTATIVE FROM A TECHNOLOGY INDUSTRY ASSOCIATION, OR A TECHNOLOGY ENGINEER; AND YOUTH MENTAL HEALTH PROFESSIONS SUCH AS A SOCIAL WORKER, CHILD ADOLESCENT PSYCHIATRIST, OR OTHER PROFESSIONAL SPECIALIZING IN YOUTH MENTAL HEALTH.

(d) WHEN POSSIBLE, AS PART OF THE RESOURCE BANK, THE DEPARTMENT, WITH ASSISTANCE FROM THE STAKEHOLDER GROUP, SHALL IDENTIFY WHAT GRADE OR AGE-GROUP MATERIALS ARE APPROPRIATE FOR, AND WHEN POSSIBLE, WHEN A MATERIAL COULD BE USED FOR A STANDARD WITHIN THE COMPREHENSIVE HEALTH EDUCATION STANDARDS.

(2) ON AND AFTER JULY 1, 2025, THE DEPARTMENT SHALL MAKE THE MATERIALS IN THE RESOURCE BANK AVAILABLE WITHOUT CHARGE TO LOCAL EDUCATION PROVIDERS, PROFESSIONAL EDUCATORS, PARENTS OR GUARDIANS OF YOUTH, STUDENTS, AND COMMUNITY PROVIDERS. A LOCAL EDUCATION PROVIDER IS NOT REQUIRED TO ADOPT OR IMPLEMENT ANY MATERIAL OR CURRICULA FROM THE RESOURCE BANK. AT THE REQUEST OF A LOCAL EDUCATION PROVIDER, THE DEPARTMENT SHALL PROVIDE TECHNICAL ASSISTANCE TO THE LOCAL EDUCATION PROVIDER IN DESIGNING AGE-APPROPRIATE CURRICULA PERTAINING TO MENTAL HEALTH.

(3) THE MATERIALS AND RESOURCES IN THE RESOURCE BANK THAT ARE AVAILABLE TO YOUTH MUST BE DEVELOPED AND UPDATED WITH INPUT

FROM YOUTH.

(4) LOCAL EDUCATION PROVIDERS ARE ENCOURAGED TO REPORT TO THE DEPARTMENT ON THE EFFECTIVENESS OF THE RESOURCE BANK MATERIALS AND CURRICULA AND TO RECOMMEND CHANGES TO IMPROVE THE MATERIALS AND CURRICULA. THE DEPARTMENT IS ENCOURAGED TO UPDATE THE RESOURCE BANK MATERIALS AND CURRICULA BASED ON RECOMMENDATIONS FROM LOCAL EDUCATION PROVIDERS, PROFESSIONAL EDUCATORS, PARENTS OR GUARDIANS OF YOUTH, STUDENTS, AND COMMUNITY PROVIDERS.

(5) THE DEPARTMENT SHALL COLLECT DISAGGREGATED DATA ON HOW OFTEN THE MATERIALS AND CURRICULA ARE ACCESSED AND INCLUDE THAT INFORMATION AT THE DEPARTMENT'S ANNUAL "SMART ACT" HEARING HELD PURSUANT TO PART 2 OF ARTICLE 7 OF TITLE 2.

(6) AS USED IN THIS SECTION, UNLESS THE CONTEXT OTHERWISE REQUIRES, "LOCAL EDUCATION PROVIDER" MEANS A SCHOOL DISTRICT, A CHARTER SCHOOL AUTHORIZED BY A SCHOOL DISTRICT PURSUANT TO PART 1 OF ARTICLE 30.5 OF THIS TITLE 22, A CHARTER SCHOOL AUTHORIZED BY THE STATE CHARTER SCHOOL INSTITUTE PURSUANT TO PART 5 OF ARTICLE 30.5 OF THIS TITLE 22, THE COLORADO SCHOOL FOR THE DEAF AND THE BLIND AUTHORIZED PURSUANT TO SECTION 22-80-102, AN APPROVED FACILITY SCHOOL AS DEFINED IN SECTION 22-2-402, OR A BOARD OF COOPERATIVE SERVICES CREATED AND OPERATING PURSUANT TO ARTICLE 5 OF THIS TITLE 22 THAT OPERATES ONE OR MORE PUBLIC SCHOOLS.

**SECTION 3.** In Colorado Revised Statutes, 22-25-104, **amend** (2) and (4.5); and **add** (3)(d) as follows:

**22-25-104. Colorado comprehensive health education program - role of department of education - recommended curriculum guidelines - allocation of funds - rules.** (2) The department of education ~~shall have~~ HAS the authority to promote the development and implementation of local comprehensive health education programs and local student wellness programs, INCLUDING PROGRAMS THAT ADDRESS THE MENTAL HEALTH IMPACTS OF SOCIAL MEDIA USE BY YOUTH.

(3) (d) THE GUIDELINES DEVELOPED BY THE DEPARTMENT OF EDUCATION PURSUANT TO SUBSECTION (3)(a) OF THIS SECTION FOR GRADES

PAGE 5-HOUSE BILL 24-1136

SIX THROUGH TWELVE MUST STRONGLY ENCOURAGE INCLUDING CURRICULUM ON THE MENTAL HEALTH IMPACTS OF SOCIAL MEDIA USE BY YOUTH.

(4.5) (a) The department of education shall identify programs that are evidence-based, culturally sensitive, and reflective of positive youth development guidelines for use by school districts in local comprehensive health education programs related to comprehensive human sexuality education.

(b) THE DEPARTMENT OF EDUCATION SHALL CONVENE A STAKEHOLDER GROUP TO IDENTIFY SCHOLARLY ARTICLES, PROGRAMS, AND RESOURCES THAT ARE EVIDENCE-BASED, CULTURALLY SENSITIVE, AND REFLECTIVE OF POSITIVE YOUTH DEVELOPMENT GUIDELINES FOR OPTIONAL USE BY LOCAL EDUCATION PROVIDERS IN LOCAL COMPREHENSIVE HEALTH EDUCATION PROGRAMS RELATED TO TECHNOLOGY USE, BRAIN DEVELOPMENT, AND THE PHYSICAL AND MENTAL IMPACTS OF SOCIAL MEDIA USE.

**SECTION 4.** In Colorado Revised Statutes, **add** part 16 to article 1 of title 6 as follows:

## PART 16
## PROTECTIONS FOR YOUTH USING SOCIAL MEDIA

**6-1-1601. Social media platform - youth users - definition.** (1) ON OR AFTER JANUARY 1, 2026, A SOCIAL MEDIA PLATFORM MUST ESTABLISH A FUNCTION THAT EITHER:

(a) MEETS THE CRITERIA IN SUBSECTION (2) OF THIS SECTION AND BE INFORMED BY THE STANDARDS ESTABLISHED IN SUBSECTION (5) OF THIS SECTION; OR

(b) DISPLAYS A POP-UP OR FULL SCREEN NOTIFICATION TO A USER WHO ATTESTS TO BEING UNDER THE AGE OF EIGHTEEN WHEN THE USER:

(I) HAS SPENT ONE CUMULATIVE HOUR ON THE SOCIAL MEDIA PLATFORM DURING A TWENTY-FOUR-HOUR PERIOD; OR

(II) IS ON A SOCIAL MEDIA PLATFORM BETWEEN THE HOURS OF TEN

PAGE 6-HOUSE BILL 24-1136

P.M. AND SIX A.M.

(2) THE FUNCTION ESTABLISHED PURSUANT TO SUBSECTION (1) OF THIS SECTION MUST PROVIDE USERS WHO ARE UNDER THE AGE OF EIGHTEEN WITH INFORMATION ABOUT THEIR ENGAGEMENT IN SOCIAL MEDIA THAT HELPS THE USER UNDERSTAND THE IMPACT OF SOCIAL MEDIA ON THE DEVELOPING BRAIN, AND THE MENTAL AND PHYSICAL HEALTH OF YOUTH USERS. THE INFORMATION MUST BE SUPPORTED BY DATA FROM PEER-REVIEWED SCHOLARLY ARTICLES OR THE SOURCES INCLUDED IN THE MENTAL HEALTH AND TECHNOLOGY RESOURCE BANK ESTABLISHED IN SECTION 22-2-127.8 (1).

(3) IF THE SOCIAL MEDIA PLATFORM ESTABLISHES THE FUNCTION DESCRIBED IN SUBSECTION (1)(b) OF THIS SECTION, THE FUNCTION MUST REPEAT AT LEAST EVERY THIRTY MINUTES AFTER THE INITIAL NOTIFICATION.

(4) (a) FOR PURPOSES OF THIS SECTION, "SOCIAL MEDIA PLATFORM" MEANS AN INTERNET-BASED SERVICE, WEBSITE, OR APPLICATION THAT:

(I) HAS MORE THAN ONE HUNDRED THOUSAND ACTIVE USERS IN COLORADO;

(II) PERMITS A PERSON TO BECOME A REGISTERED USER, ESTABLISH AN ACCOUNT, OR CREATE A PUBLIC OR SEMI-PUBLIC PROFILE FOR THE PURPOSE OF ALLOWING USERS TO CREATE, SHARE, AND VIEW USER-GENERATED CONTENT THROUGH THE ACCOUNT OR PROFILE;

(III) ENABLES ONE OR MORE USERS TO CREATE OR POST CONTENT THAT CAN BE VIEWED BY OTHER USERS OF THE MEDIUM; AND

(IV) INCLUDES A SUBSTANTIAL FUNCTION TO ALLOW USERS TO INTERACT SOCIALLY WITH EACH OTHER WITHIN THE SERVICE OR APPLICATION. A SERVICE OR APPLICATION THAT PROVIDES ELECTRONIC MAIL OR DIRECT MESSAGING SERVICES DOES NOT MEET THE CRITERION DESCRIBED IN THIS SUBSECTION (4) ON THE BASIS OF THAT FUNCTION ALONE.

(b) "SOCIAL MEDIA PLATFORM" DOES NOT INCLUDE AN INTERNET-BASED SERVICE OR APPLICATION IN WHICH THE PREDOMINANT OR EXCLUSIVE FUNCTION IS:

PAGE 7-HOUSE BILL 24-1136

(I) PROVIDING ELECTRONIC MAIL;

(II) FACILITATING COMMERCIAL TRANSACTIONS, IF THE INTERACTION WITH OTHER USERS OR ACCOUNT HOLDERS IS GENERALLY LIMITED TO:

(A) THE ABILITY TO UPLOAD A POST AND COMMENT ON REVIEWS OR THE ABILITY TO DISPLAY LISTS OR COLLECTIONS OF GOODS FOR SALE OR WISH LISTS; AND

(B) THE PRIMARY FUNCTION OF THE PLATFORM IS FOCUSED ON ONLINE SHOPPING OR E-COMMERCE RATHER THAN INTERACTIONS BETWEEN USERS OR ACCOUNT HOLDERS;

(III) FACILITATING TELECONFERENCING AND VIDEO CONFERENCING FEATURES THAT ARE LIMITED TO CERTAIN PARTICIPANTS IN THE TELECONFERENCE OR VIDEO CONFERENCE AND ARE NOT POSTED PUBLICLY OR FOR BROAD DISTRIBUTION TO OTHER USERS;

(IV) FACILITATING CROWD-SOURCED CONTENT FOR REFERENCE GUIDES SUCH AS ENCYCLOPEDIAS AND DICTIONARIES;

(V) PROVIDING CLOUD-BASED ELECTRONIC SERVICES, INCLUDING CLOUD-BASED SERVICES THAT ALLOW COLLABORATIVE EDITING BY INVITED USERS;

(VI) CONSISTING PRIMARILY OF NEWS, SPORTS, ENTERTAINMENT, OR OTHER CONTENT THAT IS PRESELECTED BY THE PROVIDER AND NOT USER GENERATED, AND ANY CHAT, COMMENT, OR INTERACTIVE FUNCTIONALITY THAT IS PROVIDED INCIDENTAL TO, DIRECTLY RELATED TO, OR DEPENDENT UPON PROVISION OF THE CONTENT; OR

(VII) INTERACTIVE GAMING, VIRTUAL GAMING, OR AN ONLINE SERVICE THAT ALLOWS THE CREATION AND UPLOADING OF CONTENT FOR THE PURPOSE OF INTERACTIVE OR VIRTUAL GAMING.

(VIII) PROVIDING INFORMATION CONCERNING BUSINESSES, PRODUCTS, OR TRAVEL INFORMATION, INCLUDING USER REVIEWS OR RANKINGS OF BUSINESSES OR PRODUCTS;

(IX) FACILITATING COMMUNICATION WITHIN A BUSINESS OR AN

PAGE 8-HOUSE BILL 24-1136

ENTERPRISE AMONG EMPLOYEES OR AFFILIATES OF THE BUSINESS OR ENTERPRISE SO LONG AS ACCESS TO THE SERVICE OR APPLICATION IS RESTRICTED TO EMPLOYEES OR AFFILIATES OF THE BUSINESS OR ENTERPRISE;

(X) SELLING ENTERPRISE SOFTWARE TO BUSINESSES, GOVERNMENTS, OR NONPROFIT ORGANIZATIONS;

(XI) PROVIDING A STREAMING SERVICE THAT STREAMS ONLY LICENSED MEDIA IN A CONTINUOUS FLOW FROM THE SERVICE, WEBSITE, OR APPLICATION TO THE END USER AND DOES NOT REQUIRE A USER OR ACCOUNT HOLDER TO OBTAIN A LICENSE FOR THE MEDIA BY AGREEMENT WITH A SOCIAL MEDIA PLATFORM'S TERMS OF SERVICE;

(XII) PROVIDING AN ONLINE SERVICE, WEBSITE, OR APPLICATION THAT IS USED BY OR UNDER THE DIRECTION OF AN EDUCATIONAL ENTITY, INCLUDING A LEARNING MANAGEMENT SYSTEM, A STUDENT ENGAGEMENT PROGRAM, OR A SUBJECT- OR SKILL-SPECIFIC PROGRAM, FOR WHICH THE MAJORITY OF THE CONTENT IS CREATED OR POSTED BY THE PROVIDER OF THE ONLINE SERVICE, WEBSITE, OR APPLICATION AND THE ABILITY TO CHAT, COMMENT, OR INTERACT WITH OTHER USERS IS DIRECTLY RELATED TO THE PROVIDER'S CONTENT;

(XIII) PROVIDING OR OBTAINING TECHNICAL SUPPORT FOR A PLATFORM, PRODUCT, OR SERVICE;

(XIV) PROVIDING CAREER DEVELOPMENT OPPORTUNITIES, INCLUDING PROFESSIONAL NETWORKING, JOB SKILLS, LEARNING CERTIFICATIONS, AND JOB POSTING AND APPLICATION SERVICES;

(XV) FOCUSED ON FACILITATING ACADEMIC OR SCHOLARLY RESEARCH; OR

(XVI) REPORTING OR DISSEMINATING NEWS INFORMATION FOR A MASS MEDIUM, AS DEFINED IN SECTION 13-90-119.

(5) THE CHIEF INFORMATION OFFICER IN THE OFFICE OF INFORMATION TECHNOLOGY, IN CONSULTATION WITH THE DIRECTOR OF THE CENTER FOR HEALTH AND ENVIRONMENTAL DATA DIVISION OF THE COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT AND THE TEMPORARY STAKEHOLDER GROUP ESTABLISHED IN SECTION 22-2-127.8, SHALL

ESTABLISH STANDARDS FOR A USER TOOL OR FUNCTION THAT MEETS THE REQUIREMENTS OF SUBSECTION (1) OF THIS SECTION FOR A SOCIAL MEDIA PLATFORM. THE STANDARDS MUST:

(a) RECOMMEND INTERVALS FOR NOTIFICATION FREQUENCY THAT ARE SIMILAR TO THOSE IN SUBSECTION (3) OF THIS SECTION;

(b) PROVIDE SAMPLE MESSAGING FOR THE CONTENT OF THE NOTIFICATION;

(c) BE INFORMED BY DATA AND RESEARCH ON THE EFFICACY OF NOTIFICATIONS; AND

(d) RECOMMEND THE AGE RANGE OF USERS WHO WOULD MOST BENEFIT FROM NOTIFICATIONS.

**SECTION 5. Appropriation.** For the 2024-25 state fiscal year, $13,974 is appropriated to the department of education for use by the student learning division. This appropriation is from the general fund and is based on an assumption that the division will require an additional 0.2 FTE. To implement this act, the division may use this appropriation for content specialists.

**SECTION 6. Act subject to petition - effective date.** This act takes effect at 12:01 a.m. on the day following the expiration of the ninety-day period after final adjournment of the general assembly; except that, if a referendum petition is filed pursuant to section 1 (3) of article V of the state constitution against this act or an item, section, or part of this act within such period, then the act, item, section, or part will not take effect unless approved by the people at the general election to be held in

PAGE 10-HOUSE BILL 24-1136

November 2024 and, in such case, will take effect on the date of the official declaration of the vote thereon by the governor.

Julie McCluskie
SPEAKER OF THE HOUSE
OF REPRESENTATIVES

Steve Fenberg
PRESIDENT OF
THE SENATE

Robin Jones
CHIEF CLERK OF THE HOUSE
OF REPRESENTATIVES

Cindi L. Markwell
SECRETARY OF
THE SENATE

APPROVED Thursday June 6th 2024 at 4:00 Pm
(Date and Time)

Jared S. Polis
GOVERNOR OF THE STATE OF COLORADO

PAGE 11-HOUSE BILL 24-1136